## CHATTANOOGA SOUTHERN RAILROAD COMPANY *v.* WHEELER, administrator.

A railway company is not, relatively to one who has no business to transact with it but who goes to its station at the instance of a third person to look after some private property which he has, without the company's permission, stored in a warehouse which it has practically abandoned and allowed to become out of repair, under any duty to keep the building and its approaches in a safe condition for use by persons entering or leaving the same.

Argued April 20, — Decided May 13, 1905.

Action for damages. Before Judge Henry. Chattooga superior court. August 31, 1904.

*J. M. Bellah* and *Pritchard & Sizer*, for plaintiff in error.
*Wesley Shropshire*, contra.

Evans, J. A suit for damages was brought by W. T. Simmons against the Chattanooga Southern Railroad Company, the plaintiff alleging that he had sustained personal injuries by reason of having fallen through a platform built around a station-house belonging to the defendant company, which platform the company had failed to keep in repair or in a safe condition for use by the public. Pending the action the plaintiff died, and his administrator, J. V. Wheeler, was made a party plaintiff in his stead. The case was three times tried, the last trial resulting in a verdict against the railroad company. It is here complaining of a judgment overruling its motion for a new trial, and also of the refusal of the court to grant a nonsuit. The plaintiff based his right to a recovery upon the following allegations of fact: At Chelsea the defendant company had a depot and warehouse, wherein goods were stored whilst awaiting shipment from that station, or delivery after shipment to its patrons. It maintained a platform attached to the building, over which ingress to and egress from the building was had by members of the public who had business to transact with the company. On or about May 8, 1900, plaintiff "was superintending the sale or delivery of guano for one Tom Knox, which had been shipped to said Knox over defendant's said road and stored for delivery in said warehouse." He entered the warehouse, as he had the right and privilege to do, for the purpose of attending to his duties in connection with the delivery of this guano, and also " for the purpose of seeing after some other goods or freight

in said warehouse, in which petitioner was interested." After at-
tending to the matters in hand, he started out of the warehouse
and went upon and along the platform; the supports under the
platform had become rotten and decayed, the floor suddenly gave
way beneath plaintiff, and he received a violent fall and serious
injury.

The plaintiff's petition undoubtedly stated a case showing lia-
bility on the part of the company.   The proof offered in his be-
half, however, fell far short of proving his case as laid.   The fol-
lowing facts were brought to light :   · The depot and warehouse at
Chelsea had been erected by the company a number of years be-
fore Simmons met with his injury, but at that time the company
had no agent at that station, and had practically abandoned all
use of the building, which had fallen into a dilapidated condition.
Patrons of the road still used the platform when they had freight
for shipment and the trainmen unloaded freight upon it.   Oc-
casionally when the consignee was not at the station to receive
freight, or when it was raining, goods were placed inside the
warehouse and there left to their fate by the trainmen.   Some
agricultural implements which had been shipped over the railroad
were for some time stored in the warehouse, which was allowed to
remain open and uncared for; but whether this was with the knowl-
edge and acquiescence of the company did not appear.   One of its
patrons stored some guano in the warehouse.   Knox inquired of
him if he had the company's permission to store it there, and he
said he had, and "it would be all right" for Knox to put his in
there.   Knox had received a car-load of guano at Chelsea, which
had been delivered to him on a side-track; part of it he unloaded
from the car into the wagons of customers to whom he had sold
some; the car was afterwards rolled down to the warehouse by
him, the rest of the guano unloaded and placed in the building, and
the car then rolled back to the point at which the company had
delivered it to him.   All this was done without permission from
the railroad authorities.   Knox afterwards sold the guano from
time to time to customers, delivering it to them at the warehouse,
and he had employed Simmons to look after the guano and make ·
delivery of it to customers when he (Knox) was not there.

It will thus be seen that, in so far as Simmons figured as the
representative of Knox, the plaintiff's case was not made out.

The company owed to neither Knox nor his agent, under the circumstances, any duty to keep in a safe condition the platform built around its abandoned warehouse.   Knox does not appear to have been even a licensee; delivery to him of the guano had been made by the company at a point removed from the building, and he subsequently used the warehouse for his private ends, without its permission and presumably without its knowledge.   No implied invitation was held out to Simmons or to the public generally to use the premises in carrying on a commercial enterprise wholly disconnected with the business in which the company was engaged, and it can not be held accountable for its failure to keep its building and appurtenances in a state of repair..   The evidence also failed to support the allegation in the petition that Simmons went into the warehouse "for the purpose of seeing after some other goods or freight" therein, in which he was personally interested.   It appears that he was the owner of a cowhide which he had tried to sell; that it had been left in one of the rooms of the depot without any permission from the company, and that he had gone into this room to see if it was still there, but did not find it. There was no pretense that he had any intention of offering the cowhide to the company for shipment, or had any business dealings with the company in connection therewith.   Our conclusion is that the evidence did not support the verdict returned in favor of the plaintiff, and that a new trial should, for this reason, have been granted.   Exception is taken to a number of charges by the court, whereby the jury were left to determine whether or not, under the evidence, the company owed to Simmons the duty of keeping its premises in a safe condition.   In the view we take of the evidence, the giving of these charges was erroneous, they not being warranted by the undisputed facts of the case.

*Judgment reversed.   All the Justices concur, except Candler, J., absent.*